MARGARET OLIVERIA *vs.* LOUIS OLIVERIA.

MARGARET OLIVERIA, administratrix, *vs.* SAME.

Bristol.    October 23, 1939. — February 27, 1940.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Negligence,* Of minor child toward his parent, Causing death. *Parent and Child. Actionable Tort. Public Policy. Minor. Evidence,* Presumptions and burden of proof.

Public policy precludes the maintenance of an action by a parent against his unemancipated minor child for personal injuries caused by the child's negligence.

In an action by a parent against his minor child for personal injuries caused by the defendant's negligence, the fact that the defendant was emancipated, if material, must be proved by the plaintiff.

The administrator of the estate of a parent of an unemancipated minor child may maintain an action against the child under G. L. (Ter. Ed.) c. 229, § 5, for causing the death of the decedent by negligence; and it is immaterial that the administrator is the surviving parent.

TWO ACTIONS OF TORT. Writs in the Second District Court of Bristol dated September 9, 1935, and September 14, 1935, respectively.

Upon removal to the Superior Court, the actions were tried before *Hurley*, J.   There were verdicts for the plaintiffs in the sums, respectively, of $940 and $1,000.

*H. W. Radowsky*, for the plaintiffs.

*F. E. Smith*, (*W. J. Fenton* with him,) for the defendant.

QUA, J.   The first action is for personal injury to the plaintiff.   The second action is for the death of the plaintiff's intestate, Manuel Oliveria, who was the husband of the plaintiff.   The defendant is the son of the plaintiff and of the deceased.   In each action the only exception is to the entry of a verdict for the defendant in accordance with leave reserved, after the jury had returned a verdict for the plaintiff.

Both actions arise out of an accident which occurred in Swansea, apparently in the early morning of September 2, 1935, when an automobile which was driven by the defendant, and in which the plaintiff, the deceased, and two other persons were passengers, ran off the road and struck a pole. See *Carvalho* v. *Oliveria*, *post*, 304.   In the first action the plaintiff alleges gross negligence of the defendant in the operation of the automobile.   In the second action she alleges negligence of the defendant in the operation of the automobile.   At the time of the accident the defendant was a minor nineteen years old, unmarried, and living with his father and mother in Fall River.   He was working, but there was no evidence that he did not turn over his wages to his father or mother.   After the accident he continued to live with his mother until the time of the trial. There was evidence that the accident was caused by careless driving of the defendant.   No contention has been made to the contrary.   It is not contended that the plaintiff or her intestate was guilty of contributory negligence.

The first case presents the question whether a parent may maintain an action against his or her unemancipated minor child, who is living in his or her family, for personal injuries caused by negligence.   In *Luster* v. *Luster*, 299 Mass. 480, we held that under similar circumstances public policy prevented recovery by the child against the parent.   Not all of the particular reasons given for our

former opinion apply conversely to the case now before us. But in our view the fundamental objection that it is contrary to the best interests of society that the innumerable intimate contacts between parent and child in the life of the family should become the subject of actions for negligence remains in full force.  Desirable as it is that the law should develop logically and symmetrically, it is still more important that it should be suited to the manner of life and habits of thought of the great mass of people whom it is to govern.  In our opinion it is repugnant to the prevailing sense of propriety that a mother should bring an action at law against her own minor child, perhaps of tender years, for some act of carelessness in the course of family life which it might seem that the child had the capacity to foresee and to prevent.  As the law must operate through general rules, and as twenty-one years is the established age at which parental authority and the common law duties of support and obedience cease, we can find no sufficient reason for introducing difficult distinctions based upon the age of the minor.  Such an action as this was unknown here until the recent extension of liability insurance held out the hope that occurrences within the home circle might become a source of net profit to the family.  The great weight of existing authority, most of which is found in very recent cases, is against such an action.  *Rambo* v. *Rambo,* 195 Ark. 832, 837.  *Schneider* v. *Schneider,* 160 Md. 18, 21–24.  *Cafaro* v. *Cafaro,* 118 N. J. L. 123.  *Crosby* v. *Crosby,* 230 App. Div. (N. Y.) 651.  *Duffy* v. *Duffy,* 117 Pa. Super. Ct. 500.  *Kloppenburg* v. *Kloppenburg,* 66 S. D. 167.  *Turner* v. *Carter,* 169 Tenn. 553.  See cases cited in *Luster* v. *Luster,* 299 Mass. 480, at page 482.

The plaintiff has argued that the burden rested upon the defendant to plead and to prove his infancy and the fact that he had not been emancipated.  It would seem, however, that in a case of this kind infancy is not in itself an affirmative "defence" as in the ordinary case of an action of contract.  See *Moskow* v. *Marshall,* 271 Mass. 302, 306. At any rate, no question of pleading appears to have been raised at the trial or at the time of the entry of the verdict

on leave reserved. *Maksymiuk* v. *Puceta*, 279 Mass. 346, 352. *Boettjer* v. *Clark*, *ante*, 59, 61. The fact of infancy is stated in the bill of exceptions and must be deemed to have been established. The burden of proving emancipation, if emancipation was material, was upon the plaintiff, who relied upon it. *Lisbon* v. *Lyman*, 49 N. H. 553, 562–563. *Cafaro* v. *Cafaro*, 118 N. J. L. 123. *Memphis Steel Construction Co.* v. *Lister*, 138 Tenn. 307, 311. There was no evidence of emancipation.

We carefully limited our decision in *Luster* v. *Luster* to the case there presented, leaving possible further applications of the principle to be determined when the occasion might arise. This decision is correspondingly limited. We have no desire to extend the rule of these cases beyond the states of fact which justify it.

There was no error in entering the verdict for the defendant in the first case.

What has been said of the first case is not decisive of the second. The second action is for the death of the defendant's father. The reasons of public policy which forbid actions between parent and minor child for personal injury caused by negligence apply with diminished force where the action is for death caused either by negligence or by wilful, wanton or reckless act and is brought not only for the benefit of a surviving wife or husband but of all the next of kin by an executor or administrator appointed by the Probate Court. G. L. (Ter. Ed.) c. 229, §§ 5, 1. Even if a surviving parent is appointed executor or administrator he or she is not acting in a personal capacity and in most instances would be acting, at least in part, for the ultimate benefit of others than himself or herself. See *Beauvais* v. *Springfield Institution for Savings*, 303 Mass. 136, 147. The differences between the two types of action are substantial and bear upon the matter of public policy.

But there are still stronger reasons for a distinction. The right of action for death is created by statute and is governed by the terms of the statutes. G. L. (Ter. Ed.) c. 229, § 5, under which this action is brought, provides broadly (with some exceptions not here material) that "a person

who by his negligence or by his wilful, wanton or reckless act . . . causes the death of a person in the exercise of due care . . . shall be liable in damages in the sum of not less than five hundred nor more than ten thousand dollars, to be assessed with reference to the degree of his culpability . . . ." There are no exceptions based upon family relationship. The statute does not limit the remedy, as do the statutes of many jurisdictions, to instances where the deceased could have maintained an action if he had lived. The action for death is not derivative in character. See *Eldridge* v. *Barton*, 232 Mass. 183, 186. The cause of action does not arise until death occurs, when it springs into existence by force of the statute. It is a different cause of action from any which the deceased ever had in his lifetime. *Wall* v. *Massachusetts Northeastern Street Railway*, 229 Mass. 506, 507. *Martinelli* v. *Burke*, 298 Mass. 390, 391–392, and cases cited. Recovery has been allowed for death coming within the terms of the statute where recovery would have been denied for personal injury. Thus there may be liability for death caused by ordinary negligence in instances where the deceased could have recovered only for gross negligence. *Bergeron* v. *Forest*, 233 Mass. 392, 399. *Shapiro* v. *Lyon*, 254 Mass. 110, 115. *Gallup* v. *Lazott*, 271 Mass. 406, 408. The satisfaction of a judgment for death against one of two tortfeasors does not release another tortfeasor from liability for the same death. *Porter* v. *Sorell*, 280 Mass. 457, 463, 464. Even a release by the deceased in his lifetime of all liability for the injury does not bar an action for his subsequent death. *Wall* v. *Massachusetts Northeastern Street Railway*, 229 Mass. 506. *Beauvais* v. *Springfield Institution for Savings*, 303 Mass. 136, 147. Due weight must be given to the penal nature of our death statute. Although an action under it wears the aspect of a civil suit and results in compensation to the surviving spouse and next of kin to the extent of the sum recovered, yet the damages are assessed wholly with reference to the degree of culpability of the defendant and constitute in effect a fine levied upon him for his wrongful conduct. *Porter* v. *Sorell*, 280 Mass. 457,

and cases cited. In *Macchiaroli* v. *Howell*, 294 Mass. 144, at page 147, it was said, "The chief characteristic of the statute is penal." See also cases there cited. The inability of a living parent to maintain an action against his minor child for reasons of public policy would not seem to be a sufficient ground on which the child could escape the penalty imposed by law for wrongfully causing death. In *Porter* v. *Sorell*, 280 Mass. 457, 462, we said, "This court cannot by construction add a limitation on punishment which the Legislature did not see fit to establish." *O'Connor* v. *Benson Coal Co.* 301 Mass. 145, 148.

We have not overlooked cases holding that the statute does not impose a liability for the death by negligence of a person to whom the defendant did not owe a duty of care. The reasoning of these decisions is that there can be no "negligence" where no duty is owed. *Bergeron* v. *Forest*, 233 Mass. 392, 399. *Robbins* v. *Athol Gas & Electric Co.* 236 Mass. 387, 391. *Gallup* v. *Lazott*, 271 Mass. 406, 408, 409. See *Roosen* v. *Peter Bent Brigham Hospital*, 235 Mass. 66, 75, 76. We do not doubt the correctness of this proposition as applied in the cases just cited, but we think it does not apply to the present case. The defendant in this case would ordinarily owe a duty to exercise some degree of care toward persons riding in an automobile which he was driving. The only reason why the deceased, if living, could not recover against the defendant for negligence in driving, causing injury, would be a public policy which forbids the bringing of an action. The fact, if it was a fact, that the defendant was the servant of his father, the deceased, in driving the automobile would not remove the deceased from the class of persons to whom the defendant owed a duty of care. A servant is liable to his master for negligent injury. *Alderman* v. *Noble*, 296 Mass. 30, 32, and cases cited. There is nothing to the contrary in *Bullard* v. *Boston Elevated Railway*, 226 Mass. 262. We are now construing the death statute to ascertain whether it extends to the case in hand. We think we would be interpreting the word "negligence" as used in the statute too narrowly and too technically were we to say that it does not include

a case where all the elements of duty and careless failure to perform it would be present, if it were not that the relation of parent and minor child would have interposed a bar against the bringing of an action by the plaintiff's intestate, if he had lived. There are cases in other jurisdictions where, as with us, the right of action under the death statute is not derivative, holding that the representatives or next of kin of a deceased husband or wife may maintain an action against the surviving spouse for causing the death. *Robinson's Administrator* v. *Robinson*, 188 Ky. 49, 51, 52. *Kaczorowski* v. *Kalkosinski*, 321 Penn. St. 438. *Minkin* v. *Minkin*, 336 Penn. St. 49. *Western Union Telegraph Co.* v. *Preston*, 254 Fed. 229, 233, 234, certiorari denied, 248 U. S. 585. See *Albrecht* v. *Potthoff*, 192 Minn. 557, and compare *Owens* v. *Auto Mutual Indemnity Co.* 235 Ala. 9; *Aldrich* v. *Tracy*, 222 Iowa, 84; *Keister* v. *Keister*, 123 Va. 157; and *Munsert* v. *Farmers Mutual Automobile Ins. Co.* 229 Wis. 581.

We are of the opinion that the second action (for death of the plaintiff's intestate) was a proper case for the jury, and that a verdict should not have been entered for the defendant.

The question whether the defendant should himself share in the distribution of the sum recovered is not now before us. *O'Connor* v. *Benson Coal Co.* 301 Mass. 145, 149.

In the first action the exceptions are overruled. In the second action the exceptions are sustained, the verdict for the defendant entered by the judge on leave reserved is set aside, and the verdict for the plaintiff returned by the jury is to stand.

*So ordered.*