SHUNSEI TAMASHIRO and KIYOKO TAMASHIRO,
*v.* ANTHONY DE GAMA *v.* RONALD TAMASHIRO.

No. 4732.

FEBRUARY 28, 1969.

RICHARDSON, C.J., MARUMOTO, ABE AND LEVINSON, JJ.,
CIRCUIT JUDGE LUM ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY RICHARDSON, C.J.

Plaintiffs, Shunsei and Kiyoko Tamashiro, sued defendant De Gama for injuries suffered in an automobile collision between vehicles operated by defendant and plaintiffs' minor, unemancipated son. Pursuant to R.L.H.

1955, § 246-16,[1] De Gama joined the minor Tamashiro as a third-party defendant. On third-party defendant's motion, the trial court dismissed the third-party complaint on the ground that defendant was not entitled to contribution from the minor son for injuries sustained by the plaintiffs. From this order defendant appeals.

The question presented is whether the minor Tamashiro is a "joint tortfeasor" as defined by the Uniform Contribution Among Tortfeasors Act as incorporated in R.L.H. 1955, § 246-10.

Section 1 of the Act [R.L.H. 1955, § 246-10] states:

"For the purpose of this Act [part] the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."

We believe that "liable" has acquired the technical, legal meaning of "subject to suit" or "liable in a court of law or equity,"[2] and the notes of the Commissioners published with the Uniform Act confirm this conclusion.[3]

---

[1] That section states in part:

"* * *. A defendant seeking contribution in a tort action may move * * * for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable as a joint tortfeasor to him or to the plaintiff for all or part of the plaintiff's claim against him."

[2] The definitions of "liable" in Black's Law Dictionary (4th ed. 1951) all imply legal compulsion. For example, "Bound or obliged in law or equity; responsible; chargeable; answerable; compellable to make satisfaction, compensation, or restitution."

[3] For example, the note for Section 1 [R.L.H. 1955, § 246-10] states: "* * *. The common obligation contemplated by this Act is *the common liability of the tortfeasors to suffer adverse judgment at the instance of the injured person,* whether or not the injured person elects to impose it." Uniform Contribution Among Tortfeasors Act § 1, 9 U.L.A. 233. (Emphasis added.)

In addition, we note that Section 2, subsection 1 of the Act (R.L.H. 1955, § 246-11) states that "the right of contribution exists among joint

The majority of the cases we have studied have so concluded. See *Zutter* v. *O'Connell*, 200 Wis. 601, 229 N.W. 74 (1930); *London Guarantee & Accident Co.* v. *Smith*, 242 Minn. 211, 64 N.W. 2d 781 (1954); *Rodgers* v. *Galindo*, 68 N.M. 215, 360 P.2d 400 (1961). Those jurisdictions which have held that "liable" means "morally culpable" have strained the language of the Act in order to avoid and limit the unjust effects of the "immunity" doctrines existing in their jurisdictions. See *Zarrella* v. *Miller*, 217 A.2d 673, (R.I. 1966) (statute prohibits suits between spouses); *Puller* v. *Puller*, 380 Pa. 219, 110 A.2d 175 (1955) public policy prohibits suits by wife against husband and by child against father).

Since the Act enables the third-party defendant to assert defenses against the plaintiff and the plaintiff is further allowed to amend his pleadings to assert claims against the third-party defendant,[4] the third-party defendant and the plaintiff are adverse parties in reality. Therefore, the reasons in support of the immunities doctrines should be equally applicable in prohibiting joinder. Not surprisingly, those courts which allow joinder under the Act of relatives of the plaintiff, where otherwise prohibited, have judicially limited the rights of parties under the Act by holding that judgment cannot be directly entered for the plaintiff against the third-party defendant. *Daly* v. *Buterbaugh*, 416 Pa. 523, 207 A.2d 412, 415 (1965).

Hawaii has neither statute nor established case deci-

---

tortfeasors," and the accompanying note of the Commissioners is consistent with that for Section 1 in its use of "liability":

"* * *. It permits contribution among all tortfeasors *whom the injured person could hold liable* jointly and severally for the same damage or injury to his person or property." Uniform Contribution Among Tortfeasors Act. § 2, 9 U.L.A. 235. (Emphasis added.)

4 Section 7 of the Act and R.L.H. 1955, § 246-16.

sions which compel application of the parent-child immunity.

The third-party defendant contends that R.L.H. 1955, § 330-3[5] and § 160-39[6] prohibit suits by parents against their children. We disagree. Both provisions financially benefit persons injured by minors because the statute makes the parents of the minor tortfeasor jointly and severally "liable in damages." When a parent is a potential plaintiff, the practical effect of the statute is to prevent a parent from suing his child in the absence of insurance. But when the child is insured, which is most likely the case in modern times, financial liability shifts to the insurer, the true defendant. Nothing in the statutory provisions cited suggest a legislative intent to prohibit suits by parents against their children in abrogation of the common law.[7]

In most jurisdictions, the immunity was created by judicial decision and premised on the public policy grounds that suits between parent and child would interfere with

---

[5] That provision states in part:

"* * *. The father and mother of unmarried minor children shall jointly and severally be liable in damages for tortious acts committed by their children, and shall be jointly and severally entitled to prosecute and defend all actions in law or in equity in which the children or their individual property may be concerned."

[6] That provision states in part:

"(b) Any negligence or misconduct of a minor under the age of twenty years when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or misconduct except as otherwise provided in the next succeeding paragraph."

[7] In Prosser, *Law of Torts* (3d ed. 1964), at page 885 it is stated:

"The common law had no similar conception of unity of legal identity in the case of a parent and his minor child. Although the parent was given custody of the child, the latter remained a separate legal person, entitled to the benefits of his own property and to the enforcement of his own choses of action, including those in tort, and was liable in turn as an individual for his own torts."

parental discipline and disturb domestic harmony. Mc-Curdy, *Torts Between Parent and Child,* 5 Vill. L. Rev. 521, 529, 537 (1960); Anno., *Right of Parent of Representative to Maintain Tort Action Against Minor Child,* 60 A.L.R. 2d 1284, 1286 (1958); Harper, *Law of Torts,* sec. 8.11.

Experience tells us that when serious injury has occurred, harm to the relationship has occurred; ill-feelings, however, may be lessened where reparation may be made. Where there is insurance coverage, intrafamily discord will be reduced because the injured party will be compensated for his losses. Since the true defendant in such cases is the insurer, the action is not unfriendly. In fact, the interests of the parties unite in favor of recovery and family harmony is assured instead of disrupted. McCurdy, *supra,* p. 546; *Gaudreau* v. *Gaudreau,* 106 N.H. 551, 215 A.2d 695 (1965); *Nahas* v. *Noble,* 77 N.M. 139, 420 P.2d 127, 129 (1966) (dissenting); *Gelbman* v. *Gelbman,* 23 N.Y.2d 434 (1969). We are in complete agreement with the decision in *Balts* v. *Balts,* 273 Minn. 419, 142 N.W.2d 66 (1966), wherein the court repudiated the immunity doctrine in view of its questionable development and unjustified existence. The court asserted at page 73 that:

"The argument that litigation by a parent against a child promotes discord is difficult to follow. Where a wrong has been committed of a character sufficiently aggravated to justify recovery were the parties strangers, the harm has been done. We believe the prospect of reconciliation is enhanced as much by equitable reparation as by denying relief altogether, particularly where the defendant is insured."

Although collusion is a possible consequence of allowance of suits between parent and child, we think that our judicial system is adequate to discover them when they occur. More importantly, the injustice of denying recovery

purely on a basis of family relationship outweighs the danger of fraud.

The public policy rationale for the parent-child immunity is further weakened by the fact that at common law, suits were allowed between parent and child especially with respect to contract and property rights. Prosser, *Law of Torts,* 885 (3d ed. 1964). Some of these suits are deeply antagonistic. We doubt a tort action in which recovery from an insurer is highly probable, would more seriously jeopardize the family relationship or discipline.

We therefore hold that this jurisdiction will not adopt the doctrine which prohibits suits by parents against their children. This holding, we caution, is limited to this adversary relationship because other intrafamily adversary situations may involve problems or considerations different from the one at hand.

Since the minor child herein is liable in tort to his parent, he is subject to contribution to his joint tortfeasor under the Uniform Contribution Among Tortfeasors Act.

Reversed and the case is remanded to permit joinder of the minor third-party defendant.

*Albert Gould* (*Cobb & Gould* of counsel) for defendant-third-party plaintiff-appellant.

*John T. Vail* (*Ueoka & Vail* of counsel) for plaintiffs-appellees.

*William F. Crockett* (*Crockett & Crockett* of counsel) for third-party defendant-appellee.